## COURT OF APPEALS.

### May 13, 1924.

## THE PEOPLE v. JOHN EMIELETA.

(238 N. Y. 158.)

(1) MURDER IN FIRST DEGREE—ERRONEOUS EXCLUSION OF WRITTEN STATEMENTS SIGNED BY DEFENDANT BECAUSE OF ABSENCE OF COUNTY CLERK'S CERTIFICATE AS TO AUTHORITY OF NOTARY.

Upon trial of an indictment charging murder in the first degree, a written statement bearing the defendant's signature is erroneously excluded because the statement appeared to be sworn to before a notary of another state and the official position of the notary was not authenticated by a county clerk's certificate, where a signing by the defendant himself was abundantly established.  The statement, if not an affidavit, did not cease for that reason to be effective as an admission.

(2) SAME—WHEN TAKING PROPERTY FROM TRUNK CONSTITUTES ROBBERY.

The unlawful taking of property by force or violence or fear of injury is robbery and a felony whether the property be taken from the person of the victim or only in his presence. (Penal Law, §§ 2120, 2121.)

(3) SAME—CONFEDERACY TO KILL—WHEN WILLFL ACT OF ONE BECOMES WILLFUL ACT OF ALL.

When two or more persons combine to kill in case killing is necessary to overcome resistance to the attainment of an end in view, the willful act of one in fulfillment of the common plan becomes the willful act of all.

(4) SAME—SUFFICIENCY OF EVIDENCE TO WARRANT CONVICTION FOR MURDER DONE BY ONE OR THE OTHER OF TWO CONFEDERATES.

Where the evidence upon a trial for murder in the first degree showed that defendant struck his victim on the head with an iron bolt with which he had armed himself in advance, and followed this, after dragging the body to a rear room, with blows upon the head inflicted with an iron pipe, and that when he left the room and came forward to search the victim's trunk his confederate was left behind for the very purpose of acting in an emergency as his judgment might dictate, that the defendant heard his confederate dealing additional blows, and far from protesting or calling for mercy or forbearance, went on with the search under cover of the safety thus assured to him, and that when the last blow was struck, and the fear of renewed resistance was at an end, the confederate left the body where it lay, and, joining the defendant, helped him in the search, the two still working in concert, the criminal design of the one is to be imputed to the other and a finding of willful murder might reasonably be drawn, whether the mortal blow was struck by the one or by the other.

(5) SAME—WHEN COURT WILL NOT EXERCISE DISCRETIONARY POWER TO DISREGARD ABSENCE OF OBJECTION.

Though the charge upon several points might not unwisely have been developed with greater amplitude and clearness, the court will not exercise its discretionary power to disregard the absence of objection thereto unless on the whole case there is a reasonable basis for the fear that injustice has been done.

(Argued April 3, 1924; decided May 13, 1924.)

APPEAL from a judgment of the Suffolk County Court rendered November 21, 1923, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Nathan O. Petty* for appellant. There is no evidence of premeditation or deliberation sufficient as a foundation for a verdict of murder in the first degree. (People v. Mantin, 184 App. Div. 767.)

*George W. Hildreth, District Attorney* (*C. B. Partridge* of counsel), for respondent. The evidence of premeditation and deliberation is sufficient. (People v. Giusto, 206 N. Y. 67; People v. Sullivan, 173 N. Y. 122; People v. Friedman, 205 N. Y. 161; People v. Madas, 201 N. Y. 349.)

CARDOZO, J.:

On July 13, 1923, about five o'clock in the afternoon, Lee Jong, a Chinese laundryman, was killed while working in his laundry at Port Jefferson, Suffolk county.

Two men, the defendant Emieleta and one Rys, had formed a conspiracy to rob. Their plan was to throw red pepper into the eyes of their victim, and take his money while he was blinded. When they set out for Port Jefferson the pepper was their only weapon. Near the railroad station, however, they found an iron bolt, which Rys handed to the defendant, who kept it in his pocket. On their arrival at the laundry, Rys went in ahead. In the struggle that followed, Rys seized the Chinaman about the waist and threw pepper into his eyes while Emieleta beat him on the head with the bolt. The two then dragged the body into a drying room in the rear, where Emieleta picked up an iron pipe, and with it dealt more blows upon the head. He then left his victim with Rys, and returning to the front room, began to search for money. While so engaged, he heard the sound of other blows, and knew that his confederate was striking with the pipe. Rys then joined him, and they proceeded to search together. They pried open a trunk, and fled with about thirty-four dollars in money. Neighbors aroused by the noise of the affray entered the build-

ing a little later, and found Lee Jong senseless on the floor. He had seven or eight deep wounds on the scalp, a fracture of the skull, and concussion and hemorrhage of the brain. The eyes were swollen, and could not be opened. The fracture of the skull covered a large surface, and disclosed shocking mutilation. The man was moribund when found, and died within a half an hour after his removal to the hospital.

These facts are established by the defendant's confession, which was proved by five witnesses, and was corroborated in many ways. The five witnesses might have been further confirmed by a written statement bearing the defendant's signature. This the trial judge excluded on the defendant's objection because the statement appeared to have been sworn to before a notary in New Jersey, and the official position of the notary was not authenticated by a county clerk's certificate. The ruling is obvious error, since a signing by defendant himself was abundantly established and the statement, if not an affidavit, did not cease for that reason to be effective as an admission. The error, though obvious, was to the prejudice of the People, and not to that of the defendant. The force of the confession was strengthened, so far as it implicated the defendant, by testimony tending to show that he had an old grudge against the Chinaman, and had threatened vengeance more than once. To one he had said when locked up for some other offense, that he was coming back to get the Chinaman, and to another that he would get him so that he would not squeal again. In opposition to all this incriminating evidence, the defendant offered nothing. He neither took the stand himself nor called any witnesses to speak for him. The facts are uncontested.

The case would involve little, if anything, for discussion in an opinion, were it not for the theory on which it was submitted to the jury. Upon the facts stated, a homicide had been committed by the defendant and his confederate in the

execution of a felony, and the defendant was guilty of murder in the first degree though there was no design to kill (Penal Law, § 1044). The difficulty is that the trial judge struck out this count of the indictment, and charged the jury that unless there was a deliberate and premeditated design to kill, the defendant was not guilty of murder in the first degree. His notion was that the felony of robbery, or of attempted robbery, was not committed, because the money ($34) was taken from a trunk and not from the person of the victim; that there was not a robbery but a larceny; and that the larceny, since it occurred in the day time and affected property of the value of less than $50, was petit larceny, a misdemeanor (Penal Law, §§ 1204, 1296, 1298, 1299.) This view is manifestly erroneous, for the unlawful taking of property by force or violence or fear of injury is robbery and a felony whether the property be takn from the person of the victim or only in his presence (Penal Law, §§ 2120, 2121.) No such theory of guilt, however, was put before the jury. We are, therefore, to consider whether the evidence sustains a finding of a premeditated design to kill.

The defendant struck his victim on the head with an iron bolt with which he had armed himself in advance. He followed this, after dragging the body to the rear room, with blows upon the head inflicted with an iron pipe. If the blows thus dealt by the defendant are the ones that caused death, a finding that he was the criminal agent might not unreasonably be supplemented by a finding of the existence in his mind of a premeditated design to kill. The nature of the weapon, the number and cruelty of the blows, and the previous expressions of hatred, all would tend to that conclusion (People v. Chiaro, 200 N. Y. 316; People v. Schmidt, 168 N. Y. 568, 576.) But to sustain the verdict of conviction upon the theory of the charge there is need to go farther. We do not know whether the fatal blows were those struck by the

defendant, or those struck by Rys while the defendant was searching for the money. In the latter situation there would be little difficulty in determining the guilt of Rys. A jury could readily infer that he was moved by a design to kill when he dealt the blows that overcame the last flickering resistance. The question is whether his confederacy with the defendant was such that the criminal design of the one is to be imputed to the other. We think the jury might find that the guilt of each of them was the same.

When two or more persons combine to kill in case killing is necessary to overcome resistance to the attainment of an end in view, the willful act of one in fulfillment of the common plan becomes the willful act of all. Incitement and execution are touched with equal guilt (Penal Law, § 2.) We are not to confuse such cases with those where murder may be found though there was no design to kill in the mind of any of the participants, as where the case is tried upon the theory of homicide while engaged in the commission of a felony (People v. Van Norman, 231 N. Y. 454.) We speak now of a confederacy to oppose resistance to the death, each of the confederates urging or encouraging the others to strike the mortal blow if the emergency suggests the need. Such a confederacy may be made out by circumstantial evidence as well as by direct (Ruloff v. People, 45 N. Y. 213, 217; People v. Marwig, 227 N. Y. 382; 232 N. Y. 531; People v. Sobieskoda, 235 N. Y. 411, 417, 418; Russell on Crimes [8th ed.], p. 117; 1 Whart. Crim. Law, p. 330, § 258; p. 326, § 255.) We are to view the behavior of the confederates at or about the moment of the homicide, and gather from the tokens of concerted action the existence of concerted purpose. Thus viewing the killing of Lee Jong, a jury might fairly say that Emieleta and Rys had combined to meet resistance with opposing force to the point, if necessary, of death. Even if the mortal blow had been struck when

Emieleta left the rear room and came froward to search the trunk, Rys was left behind for the very purpose of acting in an emergency as his judgment might dictate. The defendant heard his confederate dealing additional blows, and far from protesting or calling for mercy or forbearance, went on with the search under cover of the safety thus assured to him. When the last blow was struck, and the fear of renewed resistance was at an end, Rys left the body where it lay, and, joining the defendant, helped him in the search. The two still worked in concert. We think a finding of willful murder might reasonably be drawn whether the mortal blow was struck by the one or by the other.

The charge sufficiently presents the theory of concerted action. The greater part of it is indeed devoted to the exposition of the law in cases of homicide by one person rather than by several. At the end, however, the jury were instructed that if the two men, Rys and the defendant, " were both there and both acting in concert, they both, if any such acts were committed, they are both equally responsible." This must have meant, if they were acting in concert in the homicide and not merely in the robbery, for nowhere in the charge had robbery been mentioned. Very likely the charge upon this point as well as upon others might not unwisely have been developed with greater amplitude and clearness. The defendant's counsel, however, neither excepted to the instructions given nor asked for any others. " The court will not exercise its discretionary power to disregard the absence of objection unless on the whole case there is a reasonable basis for the fear that injustice has been done." (People v. Semione, 235 N. Y. 44, 46.)

The judgment of conviction should be affirmed.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment of conviction affirmed.