THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANDREW J. LUNSE and RICHARD DELANEY, Appellants.

Argued June 2, 1938; decided July 7, 1938.

*James D. C. Murray, George M. Carney* and *Saul Price* for Andrew J. Lunse, appellant. The refusal of the trial court to charge the various degrees of homicide constituted error. (*People* v. *Cummings*, 274 N. Y. 336; *People* v. *Schleiman*, 197 N. Y. 383.) The court erroneously overruled the challenge to the panel of jurors. (*People* v. *McQuade*, 110 N. Y. 284; *McCloskey* v. *People*, 5 Park. 308; *People* v. *Damron*, 140 N. Y. Supp. 787; *Cancemi* v. *People*, 18 N. Y. 128; *People* v. *Ebelt*, 180 N. Y. 470; *Ford* v. *O'Byrne*, 225 N. Y. Supp. 1; *People* v. *Dunn*, 157 N. Y. 528; *Wynehamer* v. *People*, 13 N. Y. 378.) The court erroneously charged the jury with regard to their power to recommend life imprisonment. (Penal Law, § 21, p. 177.) The court erroneously charged the jury that the felony was in progress at the time of the homicide. (*People* v. *Marwig*, 227 N. Y. 382.) The court erroneously charged the jury on the question of abandonment. (*People* v. *Nichols*, 230 N. Y. 221; *People* v. *Walsh*, 262 N. Y. 140.)

*Vincent Gilroy* for Richard Delaney, appellant. The rights of the defendant Delaney were prejudiced by the inflammatory and unwarranted remarks and improper matters introduced by the District Attorney. (*People* v. *Follette* 164 App. Div. 272; *People* v. *Teiper*, 186 App. Div. 830; *People* v. *Fielding*, 158 N. Y. 542; *People* v. *Manganaro*, 218 N. Y. 9; *People* v. *Myer*, 164 App. Div. 296; *People* v. *Watson*, 216 N. Y. 565; *People* v. *Conrow*, 200 N. Y. 356; *People* v. *Cascone*, 185 N. Y. 317; *People* v. *Mull*, 167 N. Y. 247; *People* v. *Corey*, 157 N. Y. 332; *Brooks* v. *Rochester Ry. Co.*, 156 N. Y. 244; *People* v. *Hill*, 37 App. Div. 327; *Swan* v. *Keough*, 35 App. Div. 80.) The court erred in refusing to charge that the killing of a person to escape is not a killing during the commission of a felony unless it is to escape with the loot or to enable another to escape with it. (*People* v. *Marwig*, 227 N. Y. 382; *People* v. *Collins*, 234 N. Y. 355.) The court erred in refusing to charge the degrees of murder and manslaughter in view of the evidence of intoxication. (*People* v. *Cummings*, 274 N. Y. 336; *People* v. *Koerber*, 244 N. Y. 147.)

*Thomas E. Dewey, District Attorney (Felix C. Benvenga, Jacob J. Rosenblum* and *Arnold Bauman* of counsel), for respondent. The verdict is not against the evidence. (*People* v. *Huter*, 184 N. Y. 237; *People* v. *Wagner*, 245 N. Y. 143; *People* v. *Moran*, 246 N. Y. 100; *People* v. *Lazar*, 271 N. Y. 27; *People* v. *Ryan*, 263 N. Y. 298: *People* v. *Walsh*, 262 N. Y. 140; *People* v. *Smith*, 232 N. Y. 239; *People* v. *Michalow*, 229 N. Y. 325; *People* v. *Marwig*, 227 N. Y. 382; *People* v. *Udwin*, 254 N. Y. 255; *People* v. *Friedman*, 205 N. Y. 161; *People* v. *Guisto*, 206 N. Y. 67; *People* v. *Chapman*, 224 N. Y. 463; *People* v. *Nichols*, 230 N. Y. 221; *People* v. *Stevens*, 272 N. Y. 373.) The court did not err in submitting the case to the jury as one of felony murder and in refusing to charge the lower degrees of homicide. (*People* v. *Seiler*, 246 N. Y. 262; *People* v. *Schleiman*, 197 N. Y. 383; *People*

v. *Thompson,* 198 N. Y. 396; *People* v. *Koerber,* 244 N. Y. 147; *People* v. *Martone,* 256 N. Y. 395; *People* v. *Stevens,* 272 N. Y. 373; *People* v. *Cummings,* 274 N. Y. 336; *People* v. *Wilson,* 145 N. Y. 628.) The trial judge charged properly and completely on the subject of abandonment. (*People* v. *Chapman,* 224 N. Y. 463; *People* v. *Nichols,* 230 N. Y. 221; *People* v. *Harris,* 136 N. Y. 423; *People* v. *Pallister,* 138 N. Y. 601; *People* v. *Tobin,* 176 N. Y. 278; *People* v. *Boggiano,* 179 N. Y. 267; *People* v. *Walsh,* 262 N. Y. 140; *People* v. *Marwig,* 227 N. Y. 382; *People* v. *Stevens,* 272 N. Y. 373.) The court's charge on the power of the jury to recommend life imprisonment was proper. (*People* v. *Flack,* 216 N. Y. 123; *People ex rel. Devoe* v. *Kelly,* 97 N. Y. 212; *People* v. *Nesce,* 201 N. Y. 111; *People* v. *Smith,* 163 Misc. Rep. 469; *People* v. *De Renna,* 166 Misc. Rep. 582; *People ex rel. Scharff* v. *Frost,* 198 N. Y. 110; *People* v. *Cain,* 206 N. Y. 202.) There was no misconduct by the District Attorney. (*People* v. *Webster,* 139 N. Y. 73; *People* v. *DeGarmo,* 179 N. Y. 130; *People* v. *Johnston,* 228 N. Y. 332; *People* v. *Fiori,* 123 App. Div. 174; *Osborne* v. *Seligman,* 39 Misc. Rep. 811; *People* v. *Slover,* 232 N. Y. 264; *People* v. *Malkin,* 250 N. Y. 185.) The action of the trial court in instructing the jury to disregard the District Attorney's remarks amply safeguarded the interests of defendants. (*People* v. *Priori,* 164 N. Y. 459; *People* v. *Manganaro,* 218 N. Y. 9.) The court properly overruled the challenge of the defendants to the entire panel of special jurors. (*City of New York* v. *City Ry. Co.,* 193 N. Y. 543; *People* v. *Katz,* 154 App. Div. 44; 209 N. Y. 311.) The contention that the failure of the District Attorney to except to the challenge was an admission that " it was sufficient as a matter of law " is without merit. No exception is necessary where the challenge is insufficient on its face. (*People* v. *Damron,* 160 App. Div. 424; 212 N. Y. 256; *Sam.* v. *State,* 265 Pac. Rep. 609.)

FINCH, J.   This is an appeal from convictions of murder in the first degree.

In the early morning of January 6, 1938, at some time between twelve-thirty and one A. M., the defendants Andrew J. Lunse and Richard Delaney with one Kerwin hailed and entered a taxicab.   Previously during the evening various " jobs " had been discussed, including McElroy's Bar and Grill on Thirty-first street.   Kerwin gave the driver directions, and shortly thereafter drew a revolver and ordered the driver and a companion who also occupied the front seat from the cab.   Kerwin directed the driver not to report the theft for fifteen minutes, and Lunse gave him three dollars for his " trouble."   Delaney then assumed the role of driver, but almost immediately was ordered by Kerwin to stop driving as he did not know how.   He was then superseded by Lunse, who drove the cab to McElroy's Bar and Grill on Thirty-first street between Broadway and Fifth avenue, New York city.

To clarify what occurred thereafter it is necessary to describe the bar and grill.   The premises were about one hundred feet long and twenty-five feet wide, and consisted of a bar in front and a dance floor with booths and tables in the rear.   A latticed partition partially separated the bar from the dance hall.   There were two entrances to the premises: the main entrance leading directly to the front end of the bar, and a side entrance leading through a hallway, with a door at the middle of the bar.   The bar itself was forty feet long.   To go behind the bar it was necessary to walk to the end where the lattice work separated the front from the rear of the premises.

At the time the defendants entered there were five or six customers at the bar and one of the owners was behind the bar; in the rear were about ten people, including the hat-check girl, a waiter, a porter and two musicians. Kerwin entered with his gun drawn, followed by Lunse and Delaney.   Kerwin ordered several of those at the

bar to go to the rear room, brandished the gun, and shouted that it was a "stick-up." Lunse, although he had been instructed by Kerwin to rifle the cash register, started to help Kerwin herd those present into the rear room. Delaney, upon noting this, rushed around the bar and removed approximately twenty dollars from the cash register. Lunse, in addition to assisting Kerwin in forcing people to the rear room, went through the pockets of the man who had been behind the bar.

While this was going on three other men alighted from a cab in front of McElroy's, intending to enter the place. They noticed a police officer, Frank Zaccor, walking toward the main entrance. At this time one of the men who had been forced behind the lattice work, but who could see the street through the openings in the lattice and the front window, espied the police officer, and, with his hand raised above the lattice, signaled for him to come in. One of the three men, at the officer's request, held the door while he entered with drawn revolver, and the other two followed, but only went as far as a telephone booth near the front of the premises.

Someone, apparently Lunse, shouted "Cop." Delaney, who had come from behind the bar, ran toward the front door. Lunse, who had been with Kerwin in the rear, ran toward the side door. Kerwin and Zaccor shot at each other almost simultaneously at close range while standing near the end of the bar. The police officer died almost immediately. Kerwin tried to stagger through the door, but the waiter struck him with a chair, and he collapsed. He died the following day. Delaney was arrested on the evening of the same day and Lunse was apprehended two days later.

The facts as related above are taken from the testimony of many of the witnesses, and are supported by the great weight of the evidence. For the most part they are substantiated by the testimony of Delaney, who took the witness stand. Some of the more controversial

evidence will be discussed in connection with the legal points raised by the defendants.

There is testimony by Delaney and others that he and Lunse had been drinking all evening prior to the robbery and that they were intoxicated. On the other hand, there is testimony by the driver from whom they took the taxicab, and by a person in McElroy's, that the defendants appeared to be sober. Both Delaney and Lunse drove the cab. Although Delaney claims that Lunse replaced him as driver because he was so intoxicated that despite his experience as a driver he was unable to drive properly, there is ample evidence that he had clarity of mind sufficient to form a criminal intent. He was sufficiently alert to notice that Lunse was engaged in forcing the woman at the bar to the rear of the room when, according to plans, Lunse should have been at the cash register, and Delaney assumed that task unto himself. Delaney admitted that while he was in the act of taking money from the cash register he realized what he was doing. All the other acts of the defendants during the robbery were performed in such manner that there was ample evidence from which a jury could find that whether or not the defendants had been drinking they had the mental power to form a criminal intent. The charge of the court on the question of intoxication and criminal intent was clear, complete and without error.

Both defendants maintained, however, that the evidence of intoxication entitled them to have the court charge the various degrees of homicide. Instead the charge was to the effect that the defendants either were guilty of murder in the first degree or should be acquitted. The trial court pointed out that neither of the defendants was the actual killer, and that no ground existed for convicting the defendants unless they were guilty of felony murder.

The question of charging the degrees of homicide in a felony murder has always been troublesome. In *People* v. *Schleiman* (197 N. Y. 383) this court affirmed a con-

viction where the trial court refused to charge the various degrees of the crime of homicide, limiting the jury to first degree verdict or acquittal. It was pointed out that under the evidence there were no facts proven which would warrant the jury finding the defendant guilty of any other degree of homicide. In that case, and in many opinions subsequently written, we have said that it is only under unusual conditions that a full charge of the various degrees of homicide may be denied, and that such a charge should be made except where no possible view of the facts would justify any other result than a conviction of the crime charged or an acquittal. (*People* v. *Cummings*, 274 N. Y. 336; *People* v. *Koerber*, 244 N. Y. 147; *People* v. *Van Norman*, 231 N. Y. 454.) In *People* v. *Seiler* (246 N. Y. 262) we had a situation almost precisely the same as the one now presented. In that case the defendant and three others were involved in a holdup in the course of which a man was killed. The defendant did not fire the fatal shot or any other shot. He testified that before the killing he drank so much intoxicating liquor as to be unable to form the requisite criminal intent. The court refused to charge the jury on the various degrees of homicide and left to them only the question whether the defendant was guilty of murder in the first degree. We held that under the circumstances this charge was proper. We said that unless the killing was " during the commission of a felony by the defendant, no evidence here presented would justify an affirmative finding which upon any logical theory would make the defendant share in the guilt of the slayer. The jury may not find the defendant guilty of a crime he did not commit and the court was not required to charge the jury upon degrees of crime, of which the jury would not be justified in finding the defendant guilty under the evidence " (p. 268).

In *People* v. *Martone* (256 N. Y. 395) we had an analogous situation, but in that case, over the objection of the

defendant, a charge of all the degrees of homicide was given. Upon appeal by the defendant from an affirmance of a conviction of manslaughter in the first degree we reversed and granted a new trial. It was pointed out that " the evidence, when accepted by the jury, justifies only one verdict. It is murder in the first degree committed in the course of a felony. * * * There is no possible view of the facts which can warrant any verdict except acquittal or murder in the first degree " (p. 397).

In the case at bar there is no view of the facts which would justify a conviction of a crime other than murder in the first degree. The defendants were guilty of a felony murder or not guilty at all. If they were so intoxicated as to be unable to form a criminal intent they could not be convicted of murder in the first degree or any degree of homicide. No claim is made, nor is there evidence to support a claim of common law murder on the part of the defendants. Nor is there evidence to support a charge that they conspired with Kerwin to kill any one who interfered with the robbery or obstructed escape. (See *People* v. *Emieleta*, 238 N. Y. 158.) Under these circumstances the refusal to charge the lesser degrees of homicide was proper.

In the recent case of *People* v. *Cummings* (274 N. Y. 336) a majority of this court concluded that there was evidence which might warrant a conviction of a lesser degree of homicide. The defendant Cummings offered evidence that he was intoxicated at the time and there was evidence that although he did not do the shooting he did direct the other defendant to shoot the deceased. Thus, upon the evidence, the defendants might have been convicted of a homicide other than that of felony murder.

The facts upon which the defense of abandonment is based are in some dispute. Witnesses within the premises testified that following the cry of " Cop," and at the time the fatal shot was fired, Delaney had run towards

the front door and Lunse had started for the side door. Delaney had, and Lunse probably had, passed the police officer, but both were still within the premises. The two late comers, who had followed the police officer into the premises, testified that no one came out of the front door before the shooting, and the third member of that group testified that no one left either the main entrance or the side entrance prior to the shooting. Mogulska, the proprietor, Callahan and Furey, employees, Gordon and Coleman, customers, also testified that Delaney and Lunse were in the premises at the time of the shooting. According to Delaney, he had actually reached the street before the shooting occurred. Lunse, as noted, did not take the stand.

The weight of the evidence supports the conclusion that neither of the defendants started toward the doors until the police officer entered, and that both were on the premises at the time of the shooting. Delaney admittedly was attempting to escape with the loot. Even accepting Delaney's statement that he had emerged from the premises prior to the shooting, the evidence sustains the finding of the jury that the defendants had not actually abandoned the criminal enterprise in such manner as to free them from responsibility for the murder. One may be guilty of a felony murder although at the time of the killing he is in another part of the premises (*People* v. *Giusto*, 206 N. Y. 67), or merely a lookout outside the premises (*People* v. *Usefof*, 227 N. Y. 622), or even where he is a distance from the scene of the crime. (See *People* v. *Michalow*, 229 N. Y. 325, 330.) The mere fact that the loot has been secured does not terminate the underlying crime (See *People* v. *Michalow, supra*), and the fact that one is attempting to get away with the loot may be evidence that the crime has not ended. (See *People* v. *Walsh*, 262 N. Y. 140, 148.) It is natural for criminals to cease looting and attempt to escape when a police officer appears on the scene, but it does not

follow that from that moment the crime is terminated and that a subsequent homicide is not a felony murder.

The law of abandonment was well defined by Chief Judge HISCOCK in *People* v. *Nichols* (230 N. Y. 221, at p. 229): " Whatever may be the other requirements of an effective abandonment of a criminal enterprise it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no farther but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme which he has helped to devise and carry forward because as the result either of fear or even of a better motive he concludes to run away at the very instant when the act in question is about to be committed and when the transaction which immediately begets it has actually been commenced, as in this case. While it may make no difference whether mere fear or actual repentance is the moving cause, one or the other must lead to an actual and effective retirement before the act in question has become so imminent that its avoidance is practically out of the question."

The evidence preponderates in sustaining the finding of the jury that at the time of the commission of the homicide neither of the defendants had effectively abandoned the common enterprise under such circumstances as would permit Kerwin to take similar action if

so inclined. The underlying felony was still in progress when Officer Zaccor was shot and killed. It was merely interrupted when he entered. It was not abandoned since death was then imminent and the natural and probable consequence of the common enterprise. At the least the jury were justified in so finding. (*People* v. *Chapman*, 224 N. Y. 463, 475, 478; *People* v. *Nichols*, 230 N. Y. 221, 229, 230.) The charge given to the jury was in accordance with these principles, and the example cited to the jury for the purpose of clarification could not lead the jury to believe that only under such circumstances could a defense of abandonment be sustained. It may be noted that in the case of *People* v. *Nichols* (*supra*), where the facts were somewhat analogous to those in the case at bar, it was held that as a matter of law the defendants had not abandoned the crime.

The point raised concerning the court's charge as to the power of the jury to recommend life imprisonment is without merit. The charge accurately and adequately described the power of the jury under the law, and in no way prejudiced the defendants. All proper requests to charge on this subject were granted.

The defendants also asserted that the trial court erred in overruling their challenge to the entire panel of special jurors. The challenge was based upon the ground that the list from which the special jurors were drawn did not contain the names of women. At the time of the trial of this case the new special jury law (Judiciary Law [Cons. Laws, ch. 30], art. 18-B; County Law [Cons. Laws, ch. 11], art. 9-A, added by Laws of 1938, ch. 552) was not yet in effect and hence need not be considered even though it may not have changed the applicable provisions. The applicable law in effect at the time of the trial provided that " No person shall be selected as such special juror who is by law disqualified or *exempt* from service as a trial juror * * *." (See McKinney's, Book 65, Unconsolidated Laws, 1937 supp., § 1695 h–2; L. 1901, ch. 602, § 3, as amd. [repealed L. 1938,

§ 552, § 27].) The Judiciary Law provided that among others entitled to exemption from service as trial jurors were women. (Judiciary Law, § 546.) Thus, since no person is to be selected as a special juror who is exempt from service as a trial juror, and women have such exemption, the Commissioner of Jurors was without power to include them on the special jury list. The contention that the failure of the District Attorney to except to this challenge was an admission that it was sufficient as a matter of law, is without merit. Exceptions are unnecessary where the challenge is insufficient on its face. (*People* v. *Damron,* 160 App. Div. 424, 431; affd., 212 N. Y. 256.)

Nor is there merit in the contention that the defendants were prejudiced by alleged misconduct on the part of the District Attorney in his cross-examination and in summation. Assuming that the District Attorney went too far, any prejudice was remedied by the instructions given by the court to the jury.

As to each defendant, the judgment of conviction should be affirmed.

LOUGHRAN, J. (dissenting). I think the degrees of homicide should have been submitted to the jury.

The defendants conspired with Kerwin to commit the robbery and they knew he had the gun. " There is no reasonable explanation of their going armed, other than that they intended to shoot any person who should obstruct the accomplishment of their crime or at least anyone who might seek to apprehend them or prevent their escape." (*People* v. *Sullivan,* 173 N. Y. 122, 132, 133.) As in that case, the deliberation and premeditation necessary to make out the crime of true murder in the first degree could well be found to have commenced " when the defendants started out on their predatory excursion." If, as the jury could also have found, Kerwin shot the police officer in fulfillment of his concert with the defendants to kill should killing be necessary to

the attainment of their end, his willful act was theirs as well.

Hence, I cannot assent to the District Attorney's proposition that " while the three planned the robbery and acted in concert in the prosecution of that common enterprise, there was no concert of action in the commission of the homicide."

In *People* v. *Cummings* (274 N. Y. 336) the codefendant Lewis did the shooting, yet it was held that there should have been submission of the degrees of homicide in the case of Cummings. It is true that Cummings told Lewis to shoot, whereas in the present case we have only the inference of concert of all three to have Kerwin shoot their way out if necessary. I had supposed, however, that the purpose of the opinion in the *Cummings* case was to end the vexations resulting from appellate stress upon such fact distinctions, and I think we should adhere to that purpose in the interest of uniform administration of the law in capital cases.

The judgments should be reversed and a new trial granted.

CRANE, Ch. J., LEHMAN, O'BRIEN and HUBBS, JJ., concur with FINCH, J.; LOUGHRAN, J., dissents in opinion in which RIPPEY, J., concurs.

Judgments of conviction affirmed.