THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JESÚS RUIZ ARZOLA, Defendant and Appellant.

Nos. 11372, 11373, and 11374.   Argued June 6, 1946.—Decided June 28, 1946.

J. C. Santiago Matos for appellant.   E. Campos del Toro, Attorney General, Luis Negrón Fernández, First Assistant Attorney General, and J. Correa Suárez, Assistant Prosecuting Attorney.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Jesús Ruiz Arzola appeals from the sentences imposed upon him for the crimes of voluntary manslaughter, the illegal carrying of a revolver, and for not having registered said firearm.

As a first assignment it is urged that the lower court committed a grave and prejudicial error in not permitting the defendant to impeach the testimony of the witnesses for the People through evidence tending to establish the fact that said witnesses were testifying, not what they had seen, but what they had agreed to testify before the trial.

· The incident which has given rise to this assignment is, in short, as follows:

When the direct examination of the witness for the prosecution, Peter Girón, ended, the defense counsel asked him whether he knew the witness for the prosecution Lázaro Serra, whether he had talked to him about the case at bar, and whether Serra had said anything to him regarding the case. Girón answered in the affirmative. Then the defense asked him: "What has he told you?" The district attorney objected stating: "One moment. That is hearsay." The judge asked whether the purpose of the question was to impeach the testimony of the witness, the defense answering that what it intended to do was "to determine if the testimony which this witness has come to give is genuine, to what he saw and not to what Lázaro Serra informed him." The court denied the question and the defense took an exception.

The witness Lázaro Serra testified upon examination by the defense that he talked frequently with Peter Girón, since the latter was his neighbor, but that he never talked to him about this case.

After five of the eight witnesses summoned by the district attorney had testified, the district attorney informed the court that he waived the testimony of Teodoro Echevarría Velázquez "as he considered that it was cumulative evidence, wholly or in part, of what had already been testified" and reserved his right to use him on rebuttal. The defense then requested that the witness waived by the district attorney be considered as evidence for the defense and the court so ordered. After the theory of the defendant had been stated, based on self-defense, Teodoro Echevarría Velázquez was called to testify as the first witness. His testimony tended to support the self-defense alleged by the defendant. When the defense counsel asked him if he had talked before the trial about this case with any other person, the witness replied that he had spoken to Lázaro Serra, and added: "Yes, sir,

and then I told him . . . '' The district attorney objected, the jury was withdrawn from the courtroom, and then the following incident took place, which we copy from the record:

"That question carries with it a series of further questions and in order to summarize it would be better for me to explain what the witness would have testified to questions put by me. What the witness would have testified to questions put by me would be in the sense (upon examination by the defense), would be in the sense that that witness which was there together with the witnesses for the People overheard one of the witnesses for the People instructing another People's witness as to the manner in which that other witness should testify. The purpose of such testimony is to show that that previous witness who appeared before the jury did not testify what he actually saw, but what the other witness told him, and assuming that he would have testified what he actually saw, his testimony would be conditioned, affected by the insistence of the other witness who told him that he had to testify in that manner. We should establish that fact, since it seems to me that the jury was entitled to have it before them in order to make evident that the other witnesses for the People should be given no credit. I was not entitled to know the testimony of that witness, since he was a witness for the People, and I became aware for the first time that this witness had something to state when he was sitting there as my witness, since the People did not want to use him, and that what he had to state was that he had knowledge that certain witness told another witness that he had to testify in a certain manner.

Judge: What witness?

Defense: Lázaro Sierra, or Rentas, instructed Girón in the manner in which he had to testify; hence, the testimony of those two witnesses is not spontaneous, it is a prejudged testimony, colored, and adulterated; what has taken place there is a moral bribe.

Judge: Let us see, how we make this clear. The defense counsel intends to impeach the testimony of Girón of the witness for the People, Girón, on the ground that what he testified was what the other witness told him . . .

Defense: I am not impeaching the testimony, the statements of those witnesses. The only thing I am doing is trying to show that their testimony is not spontaneous, that it does not show the truth. (He argues extensively. He cites § 249 and 254 of the Code.)

Judge: The Court rules to admit that.

Atty. Santiago Matos: We take exception.
Judge: Is the defendant present?
Atty. Santiago Matos: Yes.
Judge: Bring the jury."

After the jury had returned, the examination of witness Echevarría continued. When he was asked by the defense if he had spoken with Lázaro Serra he answered in the affirmative. The district attorney objected to the fact that the witness was permitted to state his conversation with Serra and the court decided not to admit the question "because the testimony of the witness for the People, Lázaro Serra, is being impeached without the proper foundation having being laid." The defense stated that it was not trying to impeach the testimony of Serra but to show the "conditioning, lack of authenticity, and the lack of seriousness of that testimony." The court upheld its ruling and the defense took an exception.

From what has been set forth it is clear and evident that the purpose of the defense was not to impeach the testimony of Peter Girón and Lázaro Serra—supposed to have been the only eyewitnesses to the occurrence—through evidence that on another occasion they had made statements contrary to those set forth at the trial, but to show that what had been testified by the one and the other witness at the trial was the result of an agreement or combination between them to testify in the manner in which they did, and not what they had actually seen.

The defendant was entitled to impeach those witnesses and to show that what had been testified by them was not the truth, through evidence affecting their veracity, honesty, or integrity, or their motive, or by contradictory evidence. Sections 383 and 520, Code of Civil Procedure. If Girón and Serra concerted or conspired to testify against the defendant and to place before the jury false or different facts to those they had actually seen, the defendant was entitled to submit to the jury evidence tending to show the falsity of the testi-

mony of such witnesses. Once the evidence was submitted
to the jury, it was incumbent upon it and not upon the court
to resolve the conflict between the testimony of the witnesses
at the trial and the evidence adduced by the defendant to
impeach them. The decision of the lower court refusing to
admit the evidence offered by the defendant is erroneous.

In the case of *People* v. *Michalow,* 128 N.E. 228, the
Court of Appeals of the State of New York, after consider-
ing an assignment of error, similar to the one under consider-
ation, reversed the judgment and ordered a new trial, saying:

"We find, however, one error by which the rights of the defendant
were prejudiced. The hostility of a witness to the defendant may
be proved by any competent evidence. It may be shown by cross-
examination of the witness, or witnesses may be called who can swear
to facts from which it appears. It is not necessary to first examine
the witness as to his hostility. (Citing authorities.) As we have
seen here, the claim of the defendant was that the hostile witnesses
had conspired to place the burden of the crime upon him. One of
the most important of these witnesses was Anne Moscowitz. A man
named Bogoc, while not sworn, was present for the defense, and
during the trial he, with the other witnesses, was kept in an anteroom
adjoining the court room. At the close of the testimony he was
called by the defendant. He said he had overheard a conversation
between a woman, evidently Anne Moscowitz, and another of the
people's witnesses. The court refused to allow him to give this
conversation. He was asked if the woman had said anything to
the witness about the testimony he had given, and again no answer
was permitted. The reply of the witness was also excluded. So was
testimony as to whether the woman had said anything to the other
witnesses . . . . The court then refused to allow further questioning
along the same line. It said that the question was presented and
rulings made—that it was not competent for Bogoc to testify as to
what he heard other witnesses say. The defendant must first ask
the witnesses themselves whether they had made statements in con-
flict with their testimony, and then he might contradict them.

"That the testimony of Bogoc, if believed, was important, is clear.
It is clear, also, that the ruling was erroneous. Obviously the object
of the testimony was to show hostility and corruption on the part
of the witnesses. It should have been received.

" . . . . If there was testimony that Mrs. Moscowitz was instructing witnesses as to the identity of the defendant, the jury was entitled to have it before them. It may not be true, yet that was a question for it to decide."

See Abbot, Criminal Trial Practice (4th ed.), § 325, p. 614; Underhill, Criminal Evidence, § 437; *Haisten* v. *State,* 59 So. 361, 5 Ala. App. 56.

Undoubtedly, the error committed by the lower court was prejudicial to the defendant, inasmuch as it is evident that the jury gave credit to the two witnesses which the defendant tried to impeach. Perhaps, the verdict would have been different, if the court had not erred in refusing to admit the evidence offered by the defense to establish the hostility and corruption on the part of said witnesses.

█ Since it does not appear from the record that the district atttorney introduced any evidence to support the information as to the alleged offense of not having registered the revolver in his name; and said information having been submitted to the court on the record filed, the sentences should be reversed in regard to said offense and the defendant acquitted.

The sentences imposed upon the appellant for the offenses of voluntary manslaughter and the carrying of weapons should be reversed and the cases remanded to the lower court for a new trial.