EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS RUIZ ARZOLA, acusado y apelante.

Núms. 11372, 11373 y 11374.—*Sometidos:* Junio 6, 1946.

*Resueltos:* Junio 28, 1946.

*J. C. Santiago Matos,* abogado del apelante; *Hon. Procurador General E. Campos Del Toro, Luis Negrón Fernández, Primer Procurador General Auxiliar, y J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Jesús Ruiz Arzola apela de las sentencias que le fueran impuestas por los delitos de homicidio voluntario, portación ilegal de un revólver y no haber registrado dicha arma.

Como primer señalamiento se alega que la corte sentenciadora cometió un grave y perjudicial error al no permitir que el acusado impugnase la declaración de los testigos del Pueblo mediante prueba tendiente a establecer el hecho de que dichos testigos estaban declarando, no lo que vieron, sino lo que ellos convinieron antes del juicio que habrían de declarar.

El incidente que ha motivado este señalamiento es, en síntesis, como sigue:

Al terminar el examen directo del testigo de cargo Peter Girón, el abogado defensor le preguntó si conocía al testigo de cargo Lázaro Serra, si había hablado con éste sobre el caso de autos y si Serra le había hablado sobre el caso, contestando Girón en la afirmativa. Preguntóle entonces la defensa: "¿Qué le ha dicho él a Ud?" Se opuso el Fiscal, diciendo: "Un momento. Eso es por información." Pre-

guntó el Juez si el propósito de la pregunta era impugnar la declaración del testigo, contestando la defensa que lo que se proponía era "determinar si esa declaración que este testigo ha venido a declarar aquí es espontánea, de lo que él vió y no lo que le informó Lázaro Serra." La corte no admitió la pregunta y la defensa anotó su excepción.

El testigo Lázaro Serra declaró a preguntas de la defensa que él hablaba a cada rato con Peter Girón, pues éste es vecino de su casa, pero que nunca le habló a Girón sobre este caso.

Después de haber declarado cinco de los ocho testigos citados por el Fiscal, éste informó a la corte que renunciaba el testimonio de Teodoro Echevarría Velázquez "por entender que es prueba acumulativa, en parte, o totalmente de lo que se ha dicho", reservándose el derecho a utilizarlo como prueba de *rebuttal*. Solicitó entonces la defensa que se considerase al testigo renunciado por el Fiscal como prueba de la defensa y la corte así lo ordenó. Expuesta la teoría del acusado, basada en la defensa propia, fué llamado a declarar como primer testigo Teodoro Echevarría Velázquez. Su testimonio tendió a sostener la defensa propia alegada por el acusado. Al preguntarle el abogado defensor si él había hablado antes del juicio con alguna otra persona en relación con este caso, contestó el testigo que había hablado con Lázaro Serra, y añadió: "Sí, señor, y entonces le dije . . .". Se opuso el Fiscal, se hizo salir al jurado, y entonces tuvo lugar el siguiente incidente que copiamos del récord:

"Esa pregunta trae una serie de preguntas posteriores y para sintetizar sería mejor yo explicar lo que hubiese declarado el testigo ahí a preguntas mías. Lo que hubiese declarado el testigo a preguntas mías, era en el sentido (en el interrogatorio de la defensa), era en el sentido de que ese testigo que estaba allí conjuntamente con los testigos de El Pueblo sorprendió a uno de los testigos de El Pueblo instruyendo a otro testigo del mismo pueblo en la forma que ese otro testigo debía declarar. El propósito de ese testimonio es demostrar que ese testigo anterior que desfiló ante

el Jurado no declaró lo que realmente vió, sino lo que el otro le dijo, y en la hipótesis de que hubiese declarado lo que realmente viera, su declaración está condicionada, afectada por la insistencia del otro testigo que le dijo que tenía que declarar en esta forma. Si nosotros establecemos ese hecho, pues me parece a mí que eso tiene que ir al jurado para demostrar la falta de credibilidad que debe dársele a los otros testigos de El Pueblo. Yo no tenía derecho a conocer el testimonio de este testigo, porque como era de El Pueblo, y por primera vez cuando se sienta ahí como testigo mío, porque el Pueblo no lo quiso utilizar, es que yo me percato que este señor tiene algo que manifestar, y ese algo que manifestar es que le consta eso, que le consta que cierto testigo le dijo al otro testigo que tiene que declarar en tal forma.

Juez: ¿Qué testigo?

Defensa: Lázaro Serra, o Rentas, le instruyó a Girón en la forma que tenía que declarar; luego la declaración de esos dos testigos no es espontánea, es un testimonio prejuzgado, coloreado, adulterado, es un soborno moral lo que ha sucedido ahí.

Juez: Para aclarar, vamos a ver. El compañero de la defensa quiere impugnar la declaración de Girón, del testigo de El Pueblo Girón a base de que lo que él declaró fué lo que le dijo otro testigo. . .

Defensa: Yo no estoy impugnando el testimonio, la declaración de esos testigos. Yo lo único que hago es tratando de demostrar que su testimonio no es espontáneo, que no refleja la realidad. (Argumenta extensamente. Cita los artículos 249 a 254 del Código.)

Juez: La Corte resuelve no admitir eso.

Lcdo. Santiago Matos: Nosotros tomamos excepción.

Juez: ¿El acusado está?

Lcdo. Santiago Matos: Sí.

Juez: Que pase el jurado."

Habiendo regresado el jurado, continuó èl interrogatorio del testigo Echevarría. Preguntado por la defensa si él había hablado con Lázaro Serra contestó que sí. Se opuso el Fiscal a que se permitiese al testigo decir qué era lo que había hablado con Serra y la corte resolvió no admitir la pregunta "porque se quiere impugnar la declaración del testigo de El Pueblo Lázaro Serra, sin haberse sentado las ba-

ses." Hizo constar la defensa que no se trataba de impugnar la declaración de Serra y sí de demostrar el "acondicionamiento, la falta de autenticidad y la falta de seriedad de esa declaración." Sostuvo la corte su resolución y la defensa anotó su excepción.

De lo expuesta resulta claro y evidente que el propósito de la defensa no era el de impugnar las declaraciones de Peter Girón y Lázaro Serra—supuestos únicos testigos presenciales del suceso—mediante prueba de que en otra ocasión habían hecho declaraciones contrarias a las que habían prestado en el acto de la vista, y sí el de demostrar que lo declarado por uno y otro testigo en el juicio era el producto de un entendido o combinación entre ellos para declarar en la forma en que lo hicieron y no lo que ellos realmente habían presenciado.

El acusado tenía el derecho de tachar dichos testigos y de demostrar que lo declarado por ellos no era la verdad, mediante evidencia tendiente a afectar su veracidad, honradez, integridad o móviles, o por evidencia contradictoria. Artículos 383 y 520, Código de Enjuiciamiento Civil. Si Girón y Serra se combinaron o conspiraron para declarar en contra del acusado y exponer ante el jurado hechos falsos o distintos a los que ellos habían realmente presenciado, el acusado tenía el derecho a someter a la consideración del jurado la prueba tendiente a demostrar la falsedad de lo declarado por dichos testigos. Una vez sometida esa prueba al jurado, era a éste y no a la corte a quien incumbía resolver el conflicto entre lo declarado por los testigos en el acto del juicio y la prueba aducida por el acusado para tacharlos. La decisión de la corte inferior negándose a admitir la prueba ofrecida por el acusado es errónea.

En el caso de *People* v. *Michalow*, 128 N. E. 228, la Corte de Apelaciones del Estado de New York, después de considerar un señalamiento de error similar al que nos ocupa,

revocó la sentencia y ordenó la celebración de un nuevo jui-cio, expresándose así:

"Encontramos, sin embargo, un error por el cual se han perjudicado los derechos del acusado. La hostilidad de un testigo hacia el acusado puede ser probada mediante cualquier evidencia competente. Puede ser establecida mediante el contrainterrogatorio del testigo, o presentando testigos que puedan declarar en cuanto a hechos de los cuales aparezca tal hostilidad. No es necesario examinar primero al testigo en cuanto a su alegada hostilidad. (Cita.) Según hemos visto aquí, la alegación del acusado era que los testigos hostiles habían conspirado para echar el peso del crimen sobre él. Uno de los más importantes de dichos testigos era Anne Moscowitz. Un hombre llamado Bogoc, aun cuando no había sido juramentado, estaba allí para la defensa, y durante el juicio él y otros testigos estuvieron encerrados en una antecámara contigua al salón de la corte. Al terminarse el testimonio fué llamado por la defensa. Dijo que había oído una conversación entre una mujer, evidentemente Anne Moscowitz, y otro de los testigos de El Pueblo. La corte no le permitió que relatara dicha conversación. Se le preguntó si la mujer había dicho algo al testigo en cuanto al testimonio dado por él y tampoco se le permitió que contestara. La réplica del testigo fué también excluída, así como el testimonio en cuanto a si la mujer había dicho algo a los demás testigos. . . . La Corte entonces se negó a permitir que se hiciesen más preguntas sobre el mismo tema. Dijo que la cuestión ya había sido presentada y resuelta—que no era competente el que Bogoc declarase sobre lo que él había oído decir a otros testigos. El acusado debe primero preguntar a los testigos mismos si ellos han hecho manifestaciones en conflicto con su testimonio y entonces podría contradecirlos.

Que el testimonio de Bogoc, de ser creído, era importante, es claro. Es claro también que la decisión fué errónea. Es obvio que el objeto del testimonio era demostrar hostilidad y corrupción por parte de los testigos. Debió ser admitido. . . .

Si había evidencia de que Mrs. Moscowitz estaba instruyendo a los testigos en cuanto a la identidad del acusado, el jurado tenía derecho a tenerla ante sí. Pudiera no ser cierta, pero ésa era una cuestión para ser decidida por el jurado."

Véanse: Abbott *Criminal Trial Practice,* (4th ed.) Sec. 325, pág. 614; Underhill's *Criminal Evidence,* sec. 437; *Haisten* v. *State,* 59 So. 361, 5 Ala. App. 56.

El error cometido por la corte sentenciadora fué sin duda alguna perjudicial al acusado, pues es evidente que el jurado dió crédito a los dos testigos a quienes el acusado trató de tachar. Tal vez el veredicto hubiese sido distinto, si la corte no hubiese errado al negarse a admitir la prueba ofrecida por la defensa para establecer la hostilidad y la corrupción de dichos testigos.

No apareciendo del récord que el fiscal presentara prueba alguna para sostener la acusación en cuanto al alegado delito de no haber registrado el revólver a su nombre; y habiendo quedado dicha acusación sometida al Tribunal por el récord practicado, procede revocar la sentencia en cuanto a dicho delito y absolver al acusado.

*Las sentencias impuestas al apelante por los delitos de homicidio voluntario y portar armas deben ser revocadas y los casos devueltos a la corte inferior para la celebración de un nuevo juicio.*