THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* VINCENT WALSH, ALFRED CELENTANO, JOSEPH CELENTANO and RUSSELL KELLY, Appellants.

(Argued April 17, 1933; decided May 31, 1933.)

*Frederic R. Coudert, Jr., John A. Bolles* and *James D. Froelich* for Vincent Walsh, appellant.

*Millard H. Ellison, Samuel W. Greenwald* and *Abraham L. Lazarus* for Alfred Celentano, appellant.

*Robert E. Manley, Samuel Stern* and *Leonard Bronner, Jr.,* for Joseph Celentano, appellant.

*James D. C. Murray* for Russell Kelly, appellant.

*Thomas C. T. Crain*, District Attorney (*Robert C. Taylor* of counsel), for respondent.

*Arthur J. W. Hilly*, Corporation Counsel (*J. Joseph Lilly* of counsel), for City of New York, *amicus curiæ*.

CROUCH, J. The four defendants were jointly indicted in the common-law form for murder in the first degree.

The fatal shot was fired by the defendant Walsh. The case was tried and submitted to the jury solely as a felony murder. The felony charged was robbery in a restaurant speakeasy. The victim was Joseph P. Burke, a police officer. All the defendants were found guilty and were sentenced to death.

The trial judge, after telling the jury that the point for them to decide was whether or not a felony had been committed, and if so, whether Officer Burke was killed while it was in progress, charged as follows: " I am going to charge you as a matter of law in this case that if you believe the testimony of the People's witnesses, if you believe the events, if you are satisfied beyond a reasonable doubt that the events transpired as detailed by the People's witnesses, if that testimony is accepted by you, then Officer Burke was killed while these defendants were participating in a felony, and if that is the case, then your only verdict can be one of murder in the first degree. If you find that is not the case, if you are not satisfied by the testimony of the People's witnesses, of course, your verdict must be not guilty."

And also as follows: " If you find in this case that the defendants were acting in concert, if you find that they were engaged in the commission of a felony — the felony of robbery, if you find and you are satisfied beyond a reasonable doubt that the killing occurred as detailed by the People's witnesses, then you should find them guilty. If you are not so satisfied, you should acquit them."

If upon any hypothesis, warranted by the testimony of the People's witnesses, the jury could have found that the commission of the robbery had come to an end before the killing took place, the instructions above quoted constitute prejudicial error. Their purport was something more than a mere statement that the People's testimony sufficed to make out a case of felony murder, if the jurors believed it. There was a clear direction to the jury, not that they could find, but that they must find the, defendants guilty, if

they believed the facts were as the People's witnesses testified. The jury was precluded from finding the facts in accordance with the People's testimony, and at the same time finding Walsh was not engaged in the commission of a felony when he killed Officer Burke.

The testimony of the People's witnesses disclosed the following facts: In the city of New York, on the northwest corner of Seventh avenue and West One Hundred and Thirty-sixth street, ground floor, was located a restaurant speakeasy having a front entrance on Seventh avenue and a side entrance on West One Hundred and Thirty-sixth street, opening through a small vestibule into a rear room taken up with tables. The front room, separated from the rear by a screen or partition, contained a bar and a lunch counter. There were two doors between the bar room and the rear room. Immediately north of this establishment fronting on Seventh avenue was a stationery and cigar store. Back of both was a room, referred to as the "entry," with a toilet used in common. Doors led into the entry both from the rear room of the restaurant and from the rear of the stationery store. There was thus, by passing through the stationery store into the entry, a third means of access to the restaurant. The vestibule of the side entrance above referred to was a small compartment about three by four feet. The inner door contained a peek hole window, had a snap lock and was always kept closed by means of an automatic check. The outer door was always unlocked. Shortly before eight A. M., on Sunday morning, June 12, 1932, in an automobile driven by defendant Kelly, the four defendants came to this place for the purpose of robbing it. The automobile was parked nearby with the motor running. Kelly remained outside across One Hundred and Thirty-sixth street. A. Celentano then entered the restaurant by the front door and bought a glass of beer and a package of cigarettes. The only occupants of the restaurant were

the barkeeper and the porter. A few minutes later J. Celentano and Walsh came in together through the front door. Both had guns. The two occupants were told to put up their hands, and did so. Four dollars were taken from the porter's pocket, and sixteen or seventeen dollars from the cash register at the back of the bar. The two occupants were taken to the entry at the rear; the porter remained there but the barkeeper came back and went behind the bar. Walsh remained in or near the entry to guard the porter, while the two Celentanos rifled the safe and the drawers back of the bar. While so engaged, a colored man and woman knocked at the side door which was opened by Walsh, who ordered them into the entry where the porter was. Walsh remained at or near the doorway of the entry. About this time three police officers, Regan, Rhodes and Burke, on their way to go on post, were informed at the corner of Seventh avenue and One Hundred and Thirty-sixth street that something was wrong in the restaurant. Thereupon Officer Burke stationed himself at the side door on One Hundred and Thirty-sixth street, and Officers Regan and Rhodes went to the front door. They could not get in. Officer Rhodes, evidently familiar with the premises, left Officer Regan and entered the stationery store to get in the restaurant through the back entry. Officer Regan kicked at the front door which was thereupon opened by one of the Celentanos. He entered, revolver in hand, told the Celentanos to throw up their hands, and proceeded to search them. Officer Rhodes, coming through the stationery store by way of the back entry, joined Officer Regan within a minute or two. He did not see Walsh. Walsh from where he had been standing had a view of the front door. It is a fair inference that he saw what happened when Officer Regan entered, and immediately started to make his escape through the side door into One Hundred and Thirty-sixth street. The porter, who was in the entry, testified he saw Officer Regan come in the front door, and

that at that moment Walsh walked away from him. The barkeeper testifies that after Officer Regan entered and rounded up the Celentanos, he heard the side door close, and that right after the door closed, Officer Rhodes walked in from the entry. After Rhodes rejoined Regan they made the two Celentanos lie face down on the floor, and completed the searching. Walsh, in the vestibule, opened the outside door, saw Officer Burke standing at the left near the outside wall, drew back, closed the door, then partly opened it again, reached out and fired the fatal shot. Thereupon he fled in the direction of Eighth avenue and was subsequently captured. Kelly, the lookout, heard the shot and saw a fellow running down the street. After a short time he went to the car, drove away, abandoned the car and was subsequently arrested.

It is possible to have a factual situation in a case of felonious homicide where only one conclusion can be drawn as to whether or not the homicide took place during the commission of the felony. There have been such cases in this court. (*People* v. *Hüter*, 184 N. Y. 237; *People* v. *Schleiman*, 197 N. Y. 383; *People* v. *Marendi*, 213 N. Y. 600; *People* v. *Marwig*, 227 N. Y. 382.) The instances where a trial judge may charge the point as matter of law are, however, exceptional. (*People* v. *Smith*, 232 N. Y. 239; *People* v. *Schleiman, supra*, p. 390.)

Whether the robbery here was still in progress when the shot was fired, depends largely upon inferences to be drawn from the conduct of Walsh. The prosecution admits that the two Celentanos were under arrest and hence no act by either of them thereafter prolonged its commission. Kelly was across the street as a lookout and aid in the "getaway." In a legal sense he was aiding in the commission of the robbery. (*People* v. *Usefof*, 227 N. Y. 622; *People* v. *Michalow*, 229 N. Y. 325, 330.) In a practical sense, his mere presence could hardly be said to prolong the commission of a robbery if it had otherwise ended. It may be assumed that

Walsh stood within the four walls of the building when he fired the shot. That is an important but not a conclusive circumstance. (*People* v. *Smith, supra*.) The jury could have found that the inner door of the vestibule had closed and locked behind him. If that was so, he was in effect definitely outside the restaurant proper. But neither is that alone conclusive. He might have been entirely outside the building when he shot and still have been engaged in the robbery, if he was getting away with the loot or was doing anything to aid his confederates in getting away with it. (*People* v. *Udwin*, 254 N. Y. 255, 263; *People* v. *Butler*, 254 N. Y. 624.) But there is no evidence to show that he had any of the loot. The inference is to the contrary. The jury could have found that his entire conduct from the moment Officer Regan entered the restaurant constituted flight and hence "desistance or abandonment" of the robbery. (*People* v. *Moran*, 246 N. Y. 100, 103.)

In short, even upon the testimony of the prosecution alone, the question of whether or not the homicide occurred during the commission of the felony was one of fact. It should have been left to the jury under instructions pointing out generally that the killing to be felony murder must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime (*Dolan* v. *People*, 64 N. Y. 485); that escape may, under certain unities of time, manner and place, be a matter so immediately connected with the crime as to be part of its commission (*People* v. *Giro*, 197 N. Y. 152); but that where there is no reasonable doubt of a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent. (*People* v. *Marwig*, 227 N. Y. 382.)

The theory of homicide as a natural result of a conspiracy or plan mutually to resist and overcome any

opposition to escape (*People* v. *Emieleta*, 238 N. Y. 158; *People* v. *Marwig*, 227 N. Y. 382; 232 N. Y. 531) was not referred to on the trial and is not now in the case. There was a request, however, to submit to the jury, as to the defendant Walsh, the question of murder in the first degree by premeditation, deliberation and intent, and to charge as to the lesser degrees of homicide. Since the jury conceivably could have found that the homicide did not take place during the commission of a felony, and since the evidence was adequate to prove premeditated murder, it was error to refuse to charge as requested. (*People* v. *Koerber*, 244 N. Y. 147; *People* v. *Moran*, 246 N. Y. 100.)

One further point which may arise on a new trial should be briefly referred to. A witness for the prosecution upon cross-examination testified that shortly after the homicide he had made a written statement to the District Attorney. Counsel, in substance, thereupon asked for the production of the statement for use in cross-examination. An objection, on the ground that there was no rule requiring the production of such a statement, was sustained. This presents the question adverted to in *People ex rel. Lemon* v. *Supreme Court* (245 N. Y. 24, 34). The courts in many jurisdictions have considered and passed upon it. (See *inter alia*, *People* v. *Davis*, 52 Mich. 569; *State* v. *Archer*, 32 N. M. 319; *Riggins* v. *State*, 125 Md. 165; *State* v. *Guagliardo*, 146 La. 949; *Centoamore* v. *State*, 105 Neb. 452; *contra*, *United States* v. *Baluyot*, 40 Philippine Rep. 385; *Arnstein* v. *United States*, 296 Fed. Rep. 946; cf. 4 Wigmore on Evidence, § 2224.) We need deal with it only as it is presented on the record here. Without extended discussion, we are of the opinion that where a witness in a criminal case testifies to having made such a statement, and the statement is in court and an inspection of it by the presiding judge reveals contradictory matter, its use for cross-examination on the question of credibility may

and usually should be permitted. "The State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons." (COOLEY, Ch. J., in *People* v. *Davis, supra.*) It is conceivable, however, that the court upon inspection may find matter, the publication of which would be prejudicial to the public interest. In such case the statement would be privileged. It has always been and still is the rule that the defense has no right to go "upon a tour of investigation, in the hope that they would find something which would aid them." (*Arnstein* v. *United States, supra,* p. 950.) When, however, it does appear that there is evidence in the possession or control of the prosecution favorable to the defendant, a right sense of justice demands that it should be available, unless there are strong reasons otherwise. The judgments of conviction should be reversed and a new trial ordered.

CRANE, J. (dissenting). These men were committing robbery. When caught at it, Walsh tried to shoot his way out. He killed while he and his associates were committing a felony. Therefore, I am for affirmance, even though there were slight errors in the charge.

Concur: POUND, Ch. J., LEHMAN and O'BRIEN, JJ. CRANE, J., dissents in memorandum. Not sitting: KELLOGG and HUBBS, JJ.

Judgments of conviction reversed, etc.