(No. 35358.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT WOLFF, Plaintiff in Error.

*Opinion filed May 18, 1960.*

LYMAN W. HULL, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and JAMES J. GLASSER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, the defendant, Robert Wolff, was jointly convicted with Paul Sheppard of armed robbery and was thereafter sentenced to the penitentiary for a term of not less than ten nor more than twenty-five years. Upon writ of error he now contends that he was deprived of competent counsel and was wrongfully denied the right to examine certain documents allegedly possessed by the prosecution.

The record indicates that at approximately 10:15 A.M. on the morning of August 16, 1956, two armed men, one short and one tall, entered the second-floor office of the Prime Rib Restaurant in Skokie, and forced the restaurant

employees into a liquor storage room which contained the business safe. The employees were ordered to face the wall with their hands raised while the bandits attempted to learn the safe combination. This having failed, David Kreda, the restaurant steward, was forced to accompany the taller of the pair to the office, where the desk and chest drawers were ransacked, while the shorter bandit remained in the liquor room with the other employees. Upon completing the search, the taller robber returned to the storage room and required each of the victims to deliver up their wallets after which the pair made their escape. Both Kreda and Ossie Glenn, the restaurant porter, identified defendant as the taller man and Sheppard as the shorter one. No witnesses were offered by either of the accused and neither testified in his own behalf.

On the day prior to trial in this cause, being January 7, 1957, a hearing was had upon Wolff's motion to suppress certain evidence which had allegedly been wrongfully obtained, and at the close thereof, one jury panel was selected and sworn. On the following day, while in the midst of selecting the second panel, the court-appointed attorney for Wolff and Sheppard filed a written motion for leave to withdraw as attorney for either or both of the accused parties because it had "become apparent to him that a conflict in interest exists between the two said defendants; that so long as he represents both of said defendants he will be unable to afford either of them effective and impartial assistance of counsel." After conducting a hearing upon the motion to withdraw outside the presence of the jury, the court denied the request on the grounds that it was not timely presented and that the nature and extent of the conflict were not disclosed. This ruling is the basis for defendant's claim that he was denied competent counsel.

Our Criminal Code provides, and this tribunal has consistently held, that appointed counsel must be competent to conduct the defense of the accused. (Ill. Rev. Stat. 1955,

chap. 38, par. 730; *People v. Nitti,* 312 Ill. 73.) The question of competency, however, is one of fact and is not based solely upon mere assertions. (*People v. Street,* 353 Ill. 60.) A motion by an attorney for leave to withdraw for any reason is addressed to the sound discretion of the court and, like all motions, it may or may not be meritorious. For that reason, a burden rests with the moving party to prove to the court's satisfaction the legitimacy of the request, and when the petitioner either fails or refuses to do so, the court may properly deny the motion. (*People v. Rasmussen,* 328 Ill. 332; *People v. Dolgin,* 415 Ill. 434.) At their arraignment on September 18, 1956, Wolff and Sheppard were both represented by the public defender and on November 7, 1956, he was allowed to withdraw and a Chicago Bar Association attorney was appointed in his place. Thereafter, counsel had some sixty-one days before trial within which to familiarize himself with the facts of the case and to determine whether any conflict of interests existed so as to warrant separate trials or at least separate attorneys. However, no motion for severance or withdrawal was filed or even suggested until the trial itself was underway, and even then the motion presented was unverified and not supported by affidavits or other proof. Rather, counsel merely asserted that a conflict of interest did exist which would become apparent to the court during the course of the trial.

In this respect the present case differs materially from *People v. Rose,* 348 Ill. 214, wherein affidavits were filed which detailed the divergent defenses, and from *People v. Bopp,* 279 Ill. 184, where the petitioner pointed out to the court the inconsistency of the codefendants' positions. Here, not only did counsel fail to show that a conflict of interest actually existed, but also, contrary to his prediction, such did not become apparent during the trial itself. Under these circumstances it is our opinion that the lower

court did not err in refusing to allow the withdrawal of counsel at such late date. Furthermore, even if we were to hold otherwise, it is difficult to see how defendant could have been prejudiced thereby since neither he nor Sheppard testified, offered any evidence, or asserted any defense which could have been affected by adverse positions. *People* v. *Dolgin,* 415 Ill. 434; *People* v. *Courtney,* 307 Ill. 441.

Defendant's remaining contentions bring into focus our decision in *People* v. *Moses,* 11 Ill.2d 84. All authorities examined agree that use of documents produced under the rule is restricted to impeachment, thus it is held that only statements or reports which could properly be called in the witness's own words should be made available to the defense. More specifically, as pointed out by the Supreme Court of the United States, the demand must be for "specific statements which had been written by the witness or, if orally made, as recorded by agents of the Government." (*Palermo* v. *United States,* 360 U.S. 343, at 345-346, 3 L. ed. 2d 1287, at 1292.) Federal criminal procedure was codified by Public Law 85-269, Sept. 2, 1957, which provides in part: "(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than defendant) to an agent of the Government shall be the subject of subpoena, discovery or inspection until said witness has testified on direct examination in the trial of the cause. * * * (e) The term 'statement' as used * * * in relation to any witness called by the United States means—(1) a written statement made by said witness and signed or otherwise adopted and approved by him; or (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded con-

temporaneously with the making of such oral statement." Title 18 U.S.C. sec. 3500; see also *Palermo* v. *United States,* 360 U.S. 343, 3 L. ed. 2d 1287.

While some of the cited decisions, and others, contain language which suggests that the foundation evidence must likewise establish that the statement or report made by the witness is contradictory to his testimony at the trial, that concept has been discarded in later cases as being manifestly unfair, (since contradiction can hardly be determined until the statement is produced,) and the better view, to which we subscribe, is that "For production purposes, it need only appear that the evidence is relevant, competent, and outside of any exclusionary rule." *Gordon* v. *United States,* 344 U.S. 414, at 420, 97 L. ed. 447, at 454; *Jencks* v. *United States,* 353 U.S. 657, 1 L. ed. 2d 1103.

There has been sharp disagreement as to what should next occur after a proper foundation for a demand of the documents has been laid. An early view, employed where the foundation evidence itself had already disclosed the conflict between the testimony of a witness and his statement or report, was that the trial judge, upon inspection of the documents, had discretion to refuse or permit inspection and use by the accused, the theory being that impeachment on the basis of the documents would be merely cumulative. *State* v. *Hayes,* 127 Conn. 543, 18 A.2d 895, at 922; *United States* v. *Socony-Vacuum Oil Co.* 310 U.S. 150 at 234-235, 84 L. ed. 1129, at 1174.

Another view, and until recently the prevailing view, has been that delivery to the accused was required only where the trial judge's inspection revealed that the statement or report did in fact conflict with the testimony of the witness given at the trial. *People* v. *Walsh,* 262 N.Y. 140, 186 N.E. 422; *People* v. *Shainuck,* 286 N.Y. 161, 36 N.E.2d 94; *United States* v. *Cohen,* (2d cir.) 145 F.2d 82.

A third and completely different view was promulgated

by our nation's highest court in *Jencks* v. *United States,* 353 U.S. 657, 1 L. ed. 2d 1103, decided three months after we first adopted the rule in the *Moses case.* It was there held that the trial judge was not to examine the statements or reports to determine if they contained material inconsistent with the testimony of the witness before deciding whether he would turn it over to the defense, the court reasoning that once the statements had been shown to contain related material, only the defense is equipped to decide whether they have value for impeachment. (See: *Palermo* v. *United States,* 360 U.S. 343, at 346, 3 L. ed. 2d 1287, at 1292.) Justices, who either separately concurred in the result or dissented entirely, disagreed with such a sweeping change saying: "The trial judge exercises his discretion with knowledge of the issues involved in the case, the nature and importance of the Government's interest in maintaining secrecy, and the defendant's need for disclosure. By vesting this discretion in the trial judge, the conflicting interests are balanced, and a just decision is reached in the individual case without needless sacrifice of important public interests." 353 U.S. at 677, 1 L. ed. 2d at 1117.

Congress was quick to react to the *Jencks* decision and passed Public Law 85-269, Sept. 2, 1957, which, as stated in the *Palermo case,* was drafted "to clarify and delimit the reach of Jencks." Insofar as it relates to the exercise of discretion by the trial judge, the pertinent provisions of the law are as follows:

"(b) After a witness called by the United States, has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statements (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject

matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement, ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge." Title 18 U.S.C., sec. 3500.

From this statutory language, as well as the observations found in the separate opinion of the concurring justices in the *Palermo case,* (360 U.S. at 361, 3 L. ed. 2d at 1300,) it may be seen that much of the *Jencks* formula was retained and we now interpret the Federal rule to be that unless a claim is made by the prosecution that a part of the statement or report ordered to be produced contains matter which does not relate to the subject matter of the testimony of the witness, the trial court, where there is no basis for privilege and relevancy and competency has been established, is required to order the statement or report delivered directly to the defendant for his examination and use. If, on the other hand, a claim is made by the prosecution that portions of the document do not relate to the testimony of the witness, the trial court shall examine the

statement or report and delete or retain the parts objected to at its discretion.

Whether to adopt the Federal view or to retain the traditional view that the delivery of documents to an accused rests in the discretion of the trial judge in any case, presents a difficult choice. While the Federal rule is one of procedure, and therefore not binding before us, it is at the same time the latest and most thorough approach to the problem. Outside of these persuasions, we cannot help but be mindful of the observation in the *Palermo case* that "the commands of the Constitution were \* \* \* close to the surface" of the decision in the *Jencks case*. Accordingly, we adopt the view that where no privilege exists, and where the relevancy and competency of a statement or report has been established, the trial judge shall order the document delivered directly to the accused for his inspection and use for impeachment purposes. However, if the prosecution claims that any document ordered to be produced contains matter which does not relate to the testimony of the witness sought to be impeached, the trial judge will inspect the document and may, at his discretion, delete unrelated matters before delivery is made to the accused.

Turning now to the instant case, defendant contends he was wrongfully denied the right to examine documents held by the prosecution. Upon cross-examination, the People's witness, Ossie Glenn, testified he had made a statement to the police some time after the robbery, but could not say for sure whether the statement had been reduced to writing. Despite the witness's uncertainty, defense counsel next asked if the statement had ever been shown to the witness, whereupon the People objected on the ground that counsel was assuming the existence of a written statement. In arguing the matter outside the presence of the jury, defendant's counsel indicated he was attempting to lay a foundation so as to require the production of the statement and stated to the court his belief that he had "a right to

see every statement made to the police by any witness who takes the stand." The trial court ruled that such right did not exist and sustained the objection with the result that defendant was forced to abandon his efforts to lay a foundation.

In deference to the trial judge, it may be said that his ruling preceded the opinion in *People* v. *Moses*, 11 Ill.2d 84, by some two months. In like manner, his ruling on the same issue in defendant's motion for new trial was made prior to our announcement in *Moses*.

Although the People now meet defendant's claim of error by contending there was insufficient evidence to establish that Glenn's statement had in fact been reduced to a writing in possession of the prosecution, it is clear from the record that defendant was prevented from his efforts to lay a foundation for a demand by the court's ruling that he could not see the statement even if its existence was established. While, on the basis of what is said in the *Moses case,* we are of the opinion the court should have permitted defense counsel to pursue his course, it is our further opinion, based upon an analysis of the entire record, that a reversal of the judgment of conviction is not required in this case.

In determining whether an accused has been prejudiced by the rejection or exclusion of evidence, so as to require a reversal of the judgment, this court will look to the entire record to see if the rejected evidence could have reasonably affected the verdict, (*People* v. *Terrell*, 262 Ill. 138,) and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, the jury could not have reached a different verdict. (*People* v. *Dunham*, 344 Ill. 268; *People* v. *Marmon*, 389 Ill. 478, *certiorari* denied 326 U.S. 725.) Apart from the testimony of Glenn, defendant was also positively identified, without contradiction or suggestion of inconsistency, by David Kreda, Robert Deberry and George

Chapas, all of whom were present and held at bay by the robbers when the crime was committed, and who viewed defendant for a considerable length of time under favorable conditions. Deberry, it appears, selected defendant from a police lineup of four men one week after the robbery; Chapas, while not viewing defendant in a lineup, made his identification at the same time. Completely removing all doubts as to defendant's identity and guilt is a signed confession which was admitted in evidence with nothing but a general objection. In the face of this evidence, it is our opinion that the jury could not have reached a different verdict than it did and that the refusal to let the defendant see the statement of one witness, if such a statement in fact existed, did not operate to deny him either a substantial right or a fair trial.

Defendant filed a motion to suppress from evidence certain guns which had been seized by the police and contends that at the pre-trial hearing on such motion the court erred in failing to require the People to produce a police report dealing with his arrest. The motion was successful as to all weapons except a revolver found in the car of defendant and his companion at the time of the former's arrest for operating his car without license plates. Assuming, but not deciding, that defendant should have been permitted to see the arrest report, there is no showing that he was in any manner prejudiced by the ruling of the court. No claim is made that the gun was introduced in evidence, nor are we so informed by either the briefs or abstract filed in the case. The abstract is the pleading of a plaintiff in error, and must present the objections and errors relied upon, as well as everything necessary to decide the questions raised, inasmuch as this court will not search the record to supply deficiencies in the abstract. *People* v. *Brown*, 415 Ill. 23; *People* v. *Mattei*, 381 Ill. 21.

The judgment of the criminal court of Cook County is affirmed.                              *Judgment affirmed.*