**People of the State of Illinois, Plaintiff-Appellee, v. Rudy Almanza, Defendant-Appellant.**

**Gen. No. 50,361.**

First District, Third Division.

November 3, 1966.

Richard P. Glovka, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was convicted in a jury trial of the unlawful sale of narcotics and sentenced to life imprisonment.[1] On appeal he contends that the evidence does not support a finding of guilt beyond a reasonable doubt and he also charges various errors in the rulings of the court during trial. The facts follow.

---

[1] Ill Rev Stats (1963), c 38, § 22–40, par 3.

"Whoever violates this Act by traffic in, selling, prescribing, administering, or dispensing any narcotic drugs, shall be imprisoned in the penitentiary for any term from 10 years to life, and for any subsequent offense shall be imprisoned in the penitentiary for life.

Two detectives of the Chicago Police Department arranged a controlled purchase of narcotics which resulted in the arrest of the defendant shortly after midnight on February 1, 1964. John Genarella, an informer and confessed narcotics addict, had advised the policemen that he could buy narcotics. They searched him, found no narcotics on his person and then provided him with $45 in marked currency. The bills had been dusted with fluorescent powder and the serial numbers on them had been recorded. The policemen took Genarella to the corner of Adams and Halsted Streets in Chicago and observed him as he entered a grill. He had a conversation with the defendant and shortly afterward returned to the policemen with two tinfoil packages containing heroin. He described the defendant to the two officers, and the arrest was made on the street about a half block away. The marked money was not found on Almanza's person, but when he was examined under ultraviolet light at the Central Police Station, the officers found traces of the fluorescent powder on his hands and on the outside of his right trouser pocket.

■ The informer Genarella was the principal witness for the State, and the defendant contends in substance that his testimony is so unworthy of belief that it should be rejected and the judgment reversed as not supported by proof of guilt beyond a reasonable doubt. Genarella testified that he had been addicted to narcotics for thirteen or fourteen years and that he was so addicted at the time defendant was arrested. He further testified that his sole employment in 1964 was by the Chicago

Any offense under this Act is a subsequent offense if the violator has been previously convicted of an offense under this Act or any previous Act of this State relating to narcotic drugs or of a felony under any law of the United States or of the District of Columbia relating to narcotic drugs. No probation or suspension of sentence shall be granted to any violator convicted under this paragraph."

Police Department and that it was to his advantage to serve as an informer as often as possible. It follows of course that this would affect his credibility, but there was evidence corroborating his testimony. The officers observed the meeting between Genarella and defendant and although they did not see an exchange of money or packages, Genarella shortly returned to the police car with narcotics. It was apparent that some one had sold the drugs to him and considering the brief period required for making the purchase, it is not an unreasonable inference that the seller knew him. Genarella identified the defendant as the seller, and there is no plausible explanation of why he could have selected the defendant as a victim on whom to perpetrate a false accusation.

The instant case is distinguishable from People v. Bazemore, 25 Ill2d 74, 182 NE2d 649, which defendant cites for the principle that the uncorroborated testimony of an informer-addict is insufficient to establish the guilt of a defendant beyond a reasonable doubt. In that case the defendant was not arrested until two months after a controlled purchase and the informer's testimony was entirely uncorroborated. In pointing out the inherent weakness of the State's case the court said, at 77:

> "This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

The distinction between that case and the one before us is obvious. The credibility of Genarella's testimony was properly submitted to the jury.

Defendant filed a motion to suppress the evidence relative to the ultraviolet examination obtained upon his arrest. He contends that the arresting officers had only

an unsupported suspicion and insufficient grounds to arrest him without a warrant. The motion was denied, and defendant charges error. The officers had reasonable grounds to believe that the crime of unlawful sale of narcotics had taken place because the informer, after promising to procure narcotics, returned to the police car with packets containing a substance which was subsequently analyzed as heroin. From their observation of the conversation between Genarella and the defendant, they had reasonable grounds to believe that defendant was the seller. The observation of traces of fluorescent powder was the direct result of a valid arrest, and the motion to suppress was properly denied.

██ ██ We proceed to consideration of the court's refusal on the motion of defendant to require the State to produce the transcript of the testimony given before the grand jury by Genarella and the police officer Montejano for the purpose of determining whether there were discrepancies on which to impeach their testimony given at the trial. Both Genarella and Montejano said they had testified before the grand jury about the same matters to which they testified on direct examination. The trial court denied defendant's motion with respect to both witnesses. It also denied his motion that the transcript of the grand jury proceedings be impounded and made part of the record. The State contended and the trial court ruled that grand jury proceedings were not subject to the subpoena duces tecum which defendant had caused to be served upon the State, directing that the transcript be produced at the trial. This was error. It is now the law, as definitely declared in People v. Johnson, 31 Ill2d 602, 203 NE2d 399, that grand jury minutes may be made available to a defendant for purposes of impeachment. In that case the court referred to its previous decisions in People v. Wolff, 19 Ill2d 318, 167 NE2d 197, and People v. Moses, 11 Ill2d 84, 142 NE2d 1, where it was held that where witnesses for

the prosecution have made pretrial statements which were in the possession and control of the State, they must be made available to the defendant. The court then proceeded to extend that rule to testimony given before grand juries, analyzing the various arguments which had previously maintained the policy of grand jury secrecy, as follows (p 605) :

> "The policy of grand jury secrecy is intended (1) to prevent the accused from escaping before he is indicted and from tampering with witnesses; (2) to protect an accused person who is not indicted against unwarranted exposure; (3) to encourage uninhibited deliberations by the grand jurors; and (4) to encourage witnesses to testify before the grand jury without fear of public disclosure. 8 Wigmore on Evidence, 3rd ed., sec. 2360.
> "None of those reasons is applicable in the present case, where the accused seeks only the transcript of the testimony of a witness who has testified at the trial. Plainly the disclosure of grand jury minutes after an indictment is returned and the case proceeds to trial will involve no danger of flight by the accused and no risk of damage to his reputation. Nor is it to be expected that he will tamper with a witness who has already testified against him. There will be no impediment to future grand jury deliberations since such deliberations will remain secret. Finally, it is in no sense unfair to a witness who testifies at the trial to reveal his previous testimony. . . ."

People v. Johnson, supra, was decided after the trial in the instant case, and the State contends that the trial court properly applied the then existing law in refusing to require the production of the grand jury minutes. It is clear that the Supreme Court of Illinois considered that its ruling was within the scope of the rulings pronounced in People v. Wolff, supra, and People v.

400

Moses, supra. Viewed in this context, the holding in People v. Johnson, supra, is not a new rule, but a clarification of existing law.

We have not deemed it necessary to pass upon other questions raised in this case.

The case must be remanded for new trial.

Judgment reversed and cause remanded.

SULLIVAN, P. J. and DEMPSEY, J., concur.