(No. 43384.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CALVIN URSLEY FLOWERS, Appellant.

*Opinion filed January 14, 1972.—Rehearing denied March 28, 1972.*

RYAN, J., and UNDERWOOD, C.J., dissenting.

BRUCE STRATTON, Illinois Defender Project, appointed by the court, of Ottawa, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JAMES N. DE WULF, State's Attorney of Rock Island, (FRED G. LEACH and THOMAS J. IMMEL, Assistant Attorneys General, and F. STEWART MERIDIAN, Assistant State's Attorney, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant was found guilty by a jury in the circuit court of Rock Island County of the crime of indecent liberties with a child, and was sentenced to a term

of not less than 10 nor more than 20 years in the penitentiary.

The victim was a four-year-old girl. Her mother had taken her to the home of a babysitter at about 6:00 A.M. At about noon, the child left that home to go to the Head Start School. There was an election on that day, the place where school was held was used as a polling place, and school was not in session. One of the election judges saw the child and told her there was no school. The defendant then came up and said that he knew the child; that he was a neighbor, and that he would take her home.

The defendant and James Harvey then got into the car with the child and the defendant drove away. One of the election judges took down the license number of the car. The defendant and the child returned in the car at about 2:30 P.M. They were alone. When let out of the car, she was carrying a pop bottle, was dressed the same, but her hair was wet and she walked with her legs wide apart in a straddle position.

A few minutes later, the child returned to the home of the babysitter, who testified that her hair was damp and messed up, her dress wrinkled, and that she was carrying the bottle of pop and two quarters, which she did not have in the morning. The babysitter took her back to the building where the Head Start School normally held sessions. One of the ladies removed the child's panties and observed a thick mucus secretion there, and noticed that the child's vaginal area was red and scratchy. The babysitter testified that the rectum was red and irritated, and that there was a trace of blood on her underpants.

James Harvey, the man who had been in the car with the defendant and the little girl on the day in question, testified that he had known the defendant for many years, and that after leaving the polling place, the defendant dropped him off at the Campbell Hotel, and the child was still in the car.

Two witnesses saw the defendant and Harvey in the

car with the child. Harvey asked them if they knew the child and they answered that they did not. Another witness who saw the defendant carrying the child, asked if he had found a lost child and he answered, "No," and stated that he knew her.

The child was taken to the hospital where she remained for three or four days. Her mother observed that her hair had been wet and dried stringy; that she looked like she had been crying, and was sullen and quiet, which was unusual.

The child was examined by two doctors. They found a bruising, reddening and swelling in the vaginal area and the area between the vagina and anus. There were superficial lacerations in the perianal area and the anus was dilated and enlarged.

An employee of the F.B.I. testified as an expert, relative to hair and fibre identification. He testified that hair found in the child's panties matched that taken from the head of the defendant; that the hair on the defendant's clothing matched that taken from the child; that hair may be identified by race and when compared with that from an individual may be identified as not coming from that individual; and that it is not possible to state that a designated strand of hair came from a particular individual. He also matched fibres from the defendant's clothing on the child's clothing and, likewise, fibres from her clothing on the defendant's clothing.

The defendant contends that he was denied due process of law by the denial of discovery; that there was a total failure of proof of his age; that the court committed error in certain statements made to the jury; that the trial court should have ordered a pyschiatric examination pursuant to the statute (Ill.Rev.Stat. 1969, ch. 23, par. 2402); that opinion evidence was improperly admitted; and that the trial court erred in denying the defendant's request that a 1955 conviction not be used for impeachment purposes.

We find it necessary to consider only the contention relative to denial of due process by reason of the court's refusal to permit the defendant any discovery. The defendant, prior to trial, requested the court to order the State to disclose any evidence favorable to him. He also requested the court to direct the State to advise him of any tests which were made to determine whether spermatazoa was in or on the person of the victim, and if such tests were made, the results of such tests, and the results of any other medical reports concerning the condition of the victim.

In *People v. Hoffman, 32 Ill.2d 96,* the defendant was found guilty of murder. The victim had checked in at a hotel with the defendant. His defense was that he had left the victim at 6:00 in the evening and returned at 6:00 the following morning to find her dead. A police report had indicated that a pair of men's shorts, wet in the frontal area, had been found by the police in the closet. The defendant requested the production of the shorts, and this request was denied. We noted that their importance to the defense was obvious, and at pages 99 and 100 stated: "In *Brady v. State of Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194,* the Supreme Court held that '\*\*\* the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment \*\*\*.' 373 U.S. 83, 87, 10 L.Ed.2d 215, 218, 83 S.Ct. 1194, 1196."

The defendant here correctly points out that the absence of spermatazoa in or on the person, or on any of the articles of the child's clothing, might be strong circumstantial evidence on his behalf. Without examining the results of any spermatazoa or blood tests, the defendant could not know whether such evidence was favorable or unfavorable to him. The State contends that the testimony was only that such tests were "requested"; that there was nothing in the record to establish that

"results" were ever obtained or that such results were in existence and capable of being discovered. That is hardly a satisfactory answer. The prosecution could have, and should have, candidly stated whether or not results had been obtained, and if obtained, what they disclosed. The circumstances of this case compel an inference that tests had been made and results obtained which were not disclosed.

In *People v. Moses, 11 Ill.2d 84, 89,* we stated: "Where it appears that there is evidence in the possession and control of the prosecution favorable to the defendant, 'a right sense of justice demands that it should be available, unless there are strong reasons otherwise.' People v. Walsh, 262 N.Y. 140."

The State cites *People v. Hester, 39 Ill.2d 489,* for the rule that it is not reversible error to fail to disclose results of scientific tests absent intimation that such results were contrary to testimony at the trial. In *Hester,* we held that the notations jotted down by the crime laboratory technicians need not be turned over absent intimation that they were contrary to their testimony. However, in *Hester,* the defendant had been given "prior statements of all State witnesses, copies of his written confession and the complete records of the board of education concerning him, copies of the autopsy and crime laboratory test results, as well as the opportunity on two occasions for his own experts to perform independent experiments on the physical evidence at the police laboratory, although the results of these tests were never offered at the trial." (39 Ill.2d at 516.) We there observed that the defendant was not deprived of any right because he failed to obtain the notations jotted down particularly in view of the broad discovery granted to him. The circumstances in this respect in *Hester* are a far cry from those in the case at bar, where all discovery was denied.

We also note that the defendant should have been granted a pretrial request for a list of witnesses to the

extent allowed by statute (Ill.Rev.Stat. 1969, ch. 38, par. 114—9), and that he should have been allowed to examine the physical evidence, *e.g.*, the clothing and hair samples, which the prosecution intended to introduce in evidence at the trial. *(People v. Tribbett, 90 Ill.App.2d 296, aff'd 41 Ill.2d 267.)* Likewise, where no privilege exists and where the relevancy and competency of pretrial statements or reports shall have been established, the trial judge should order that the reports or pretrial statements of the prosecution witnesses in the possession or control of the State be made available to the defendant for his inspection and use for impeachment purposes upon a proper showing of their existence. "The State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons. *(People v. Johnson, 31 Ill.2d 602, 605; People v. Wolff, 19 Ill.2d 318, 327; People v. Moses, 11 Ill.2d 84, 89.)* The rule relative to the production of pretrial statements of prosecution witnesses also applies to police reports. *People v. Cagle, 41 Ill.2d 528, 534.*

The totality of the denial of the discovery and access to information to which the defendant was entitled constituted a denial of due process and necessitates a retrial of this case. Undoubtedly one of the reasons for the complete denial of discovery to the defendant was the breadth of the discovery which he sought. As his counsel puts it, his request was "unprecedented." He clearly sought much by way of discovery to which he was not entitled. Nevertheless the complete denial of discovery resulted in a violation of due process.

We find it necessary to discuss only certain of the other alleged errors in the conduct of the trial and we presume that upon remand such errors will not recur. Section 2 of "An Act to provide for trial in a circuit court for a psychiatric examination of persons charged with sexual crimes against children" (Ill.Rev.Stat. 1969, ch. 23,

par. 2402) provides that the court require a psychiatric examination of the person charged. Also, under the facts of this case, we do not find an abuse of discretion in the trial court's denial of the request for a bill of particulars. *(People v. Curtis, 41 Ill.2d 147, 148; People v. Sims, 393 Ill. 238, 242.)* And, in exercising its discretion as to whether or not the 1955 conviction of the defendant for armed robbery should be admitted into evidence for impeachment purposes, the trial court should be guided by the considerations noted in *People v. Montgomery, 47 Ill.2d 510.*

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE RYAN, dissenting:

The defendant shot for the sky in his discovery motion, most of which, the majority opinion admits, sought discovery of items to which defendant clearly was not entitled. Now, after an adverse verdict, defendant combs through the motion seeking technical error upon which to base his prayer for a new trial.

The majority opinion asserts that the defendant should have been granted a pretrial request for a list of witnesses to the extent allowed by statute. This is not what defendant requested. Defendant's motion requested the names and addresses of any persons the prosecution knows to possess information relevant to the charges in the indictment. This is clearly beyond the scope of section 114—9 of the Code of Criminal Procedure which simply provides that on motion of defendant the court shall order the State to furnish the defendant with a list of prosecution witnesses and their addresses. (Ill.Rev.Stat. 1969, ch. 38, par. 114—9.) How simple it would have been to phrase the motion in the language of the statute. Instead, defendant attempted to broaden his demand to include that to which he was not entitled and now claims error

because the court did not reduce his demand to that to which he should have limited himself in the first instance.

Likewise, defendant requested the court to order the state to produce "all statements made by any witness and \*\*\* the right to inspect police reports." The pretrial motion was denied. However, defendant was not denied the use of prior statements made by witnesses. During the trial the defendant had the opportunity on cross-examination of the State's witness to ask them if they had given any previous statements. On three occasions the witnesses answered that they had given statements to the police. Thereupon copies of the statements were made available to defense counsel and he was given an opportunity to examine the same before resuming his cross-examination. He was furnished with a copy of each statement, the existence of which he had established, which has been held to be a prerequisite to the production of such statements. *(People v. Dennis, 47 Ill.2d 120; People v. Durso, 40 Ill.2d 242; People v. Wolff, 19 Ill.2d 318.)* This court has not been informed what, if anything, was contained in those statements which would have been of greater value to him had the statements been furnished at the time of the pretrial discovery motion rather than at the trial; nor does the defendant contend that there are any statements in existence other than those which were furnished to him at the trial. In *People v. Golson, 37 Ill.2d 419, 422,* this court said, "We know of no case which has been reversed for failure to produce a statement without some preliminary showing that such a statement exists."

As to the failure of the court to order the production of police reports, the statements referred to above which were furnished to defendant during the trial were statements which the police had taken from the witnesses who had seen the victim and the defendant either before or after the incident. The only other police report to which the defendant alludes is one referred to during cross-examination of a police officer. Defendant requested the

right to interrogate the officer out of the presence of the jury to determine if he had made out a report and indicated he wanted to use any such report with which to impeach him. When his right to interrogate the police officer out of the presence of the jury was denied, defense counsel elected not to ask the police officer as to the existence of a police report during further cross-examination in the presence of the jury, and therefore did not establish the existence of any such report. My comment above concerning the statements is equally applicable here. This officer was not an eyewitness to any of the events. He did not identify the defendant. His testimony primarily concerned identifying articles of clothing which he had received from the victim at the hospital and from the defendant at the county jail which he marked for purposes of identification and placed in an evidence locker. Impeachment of this witness would not have altered the outcome of the trial.

The majority opinion criticizes the State for not candidly stating whether or not results of tests had been obtained. However, it was during cross-examination of another police officer that the information referred to in the majority opinion to the effect that tests were "requested" was elicited. It is hard to understand why defendant did not pursue the cross-examination further and ascertain if results of these tests requested by the police had in fact been received by them. Here, as in the case of the police reports above, I am unwilling to send this case back for a new trial for the failure to produce that which a subsequent hearing may prove not to exist. By one more question on cross-examination defendant could have informed this court whether the State did in fact have the results of tests which had not been disclosed. It was within the power of defendant to show whether or not there were police reports or results of tests. He elected not to do so. He should not be rewarded for this failure.

True, the defendant was entitled to inspect the

physical items which were to be used as evidence. However, these items consisted of clothes of the victim, clothes of the defendant and hair samples combed from the victim and from the defendant. At the time that the motion was made these items had already been forwarded to the Federal Bureau of Investigation where the clothing items had been put through a process by which foreign substances were removed therefrom. A further examination of these clothes for foreign articles would be of no avail. The hair found on the victim's clothing was identified as hair coming from a person of the same race as the defendant. Similarly, hair found on the defendant's clothing was identified as hair coming from a person of the same race as the victim. The expert also testified that cotton fibers found on the defendant's jacket and shirt matched those of the victim's dress and that the fibers found on the victim's clothing matched those of the defendant's jacket. He also testified that the fibers matching those of the defendant's hat were found on the victim's dress and panties. Similarly, fibers that matched those of the defendant's shirt were found on the dress and panties of the victim and also fibers matching those of the defendant's trousers were found on the victim's dress, undershirt and panties. The defendant had the opportunity and did cross-examine this expert at length. He has not indicated in what manner he was prejudiced by not being permitted to examine these items before trial. I can see no possibility that he sustained prejudice thereby. See *People v. Tribbett, 41 Ill.2d 267, 272.*

Admittedly defendant was denied certain discoveries to which he was entitled under the decisions of this court, but at most such denial can only be considered as harmless error. The evidence of guilt is overwhelming. There is nothing in the entire record to indicate anything other than the defendant's guilt. It is difficult to imagine how the result of the trial would have been different had the discovery been allowed. Under these circumstances this

court has held that the judgment will not be set aside. *People v. Tribbett; People v. Bridges, 28 Ill.2d 165; People v. Orr, 10 Ill.2d 95.*

The conduct of the prosecutor was not as flagrant as the majority opinion has painted it to be. Nothing in the record indicates that there is any evidence in the possession or control of the prosecutor favorable to the defendant and thus the language quoted from *People v. Moses* is not appropriate. I also consider the quote from *People v. Johnson* inapplicable because the record does not indicate that the State interposed any obstacle to the disclosure of facts. Primarily, the defendant was denied discovery because he was not entitled to discovery of most of what he sought or did not establish the existence of those things to which he was entitled. In the few areas where he was denied that to which he was entitled, I can see no prejudice flowing therefrom; nor has the defendant informed this court how he was prejudiced by this denial. In determining whether the accused has been prejudiced this court should look to the entire record and should not reverse the judgment where guilt is shown beyond a reasaonble doubt or where, upon the evidence, the jury could not have reached a different verdict. *(People v. Wolff.)* I fear that the majority did not look to the entire record but focused on the technical errors involved in the discovery problem. I would affirm the conviction.

MR. CHIEF JUSTICE UNDERWOOD joins in this dissent.